IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DANIEL SCOTT JACKSON                                                           PLAINTIFF

v.                                    CIVIL NO. 16-5001

NANCY A. BERRYHILL,[1] Acting Commissioner,
Social Security Administration                                                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Daniel Scott Jackson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

**I.      Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on July 22, 2013, alleging an inability to work since September 13, 2008,[2] due to back pain, high blood pressure, and high cholesterol.  (Doc. 12, pp. 28, 51, 52, 60, 61). For DIB purposes, Plaintiff maintained insured status through September 30, 2013.  (Doc. 12, pp. 211).  An administrative video hearing was held on July 15, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 12, pp. 25-50).

By written decision dated August 11, 2014, the ALJ found that during the relevant time periods, Plaintiff had a severe impairment of chronic back pain. (Doc. 12, p. 14).  However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairment did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Doc. 12, p. 15).  The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 413.967(b) except the claimant is able to occasionally stoop and crouch.

(Doc. 12, p. 15).  With the help of a vocational expert (VE), the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could perform work as a cashier and a storage facility rental clerk. (Doc. 12, p. 19-20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on November 3, 2015.  (Doc. 12, p. 4-6).  Subsequently, Plaintiff filed this action.  (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties.

---

[2] At the hearing held before the ALJ, Plaintiff's counsel moved to amend the disability onset date to April 28, 2012 (two days after denial from a previous hearing).  (Doc. 12, p. 28).

2

(Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable

3

by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 413.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

## III.    Discussion:

Plaintiff argues the following issues on appeal: 1) the ALJ erred in disregarding the opinions and findings of the primary treating physician, Dr. Kendrick; 2) the ALJ erred in failing to consider all of Plaintiff's impairments in combination; 3) the ALJ erred in his analysis and credibility findings in regard to Plaintiff's subjective complaints of pain; and 4) the ALJ erred in finding Plaintiff maintained the RFC to perform a limited range of light work. (Doc. 11). [3]

---

[3] The Court has reordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner

4

### A.     Insured Status and Relevant Time Periods:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on September 30, 2013. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of April 28, 2012, his amended alleged onset date of disability, through September 30, 2013, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time he last met insured status requirements).

With respect to Plaintiff's SSI application, benefits are not payable prior to the date of the application, regardless of how far back disability may, in fact, be alleged or found to extend. See 20 C.F.R. § 416.335. Therefore, the relevant period is from July 22, 2013, the date Plaintiff protectively applied for SSI benefits, through August 11, 2014, the date of the ALJ's decision.

### B.     Combination of Impairments:

Plaintiff argues that the ALJ erred in failing to consider all of the claimant's impairments in combination. The ALJ stated that in determining Plaintiff's RFC prior to the expiration of his insured status, he considered "all of the claimant's impairments, including

5

impairments that are not severe." (Doc. 12, p. 14). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 12, p. 15). Such language demonstrates the ALJ considered the combined effect of Plaintiff's impairments. Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994).

### C.    Subjective Complaints and Symptom Analysis:

Turning to the ALJ's assessment of Plaintiff's subjective complaints, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.  In a Function Report dated July 28, 2013, Plaintiff stated that he was very limited in his activity when he was experiencing back pain; however, when he was free of pain, he indicated that he was able to take care of his personal needs, care for his children, prepare simple meals, ride in a car, and go out alone without anyone accompanying him. (Doc. 12, pp. 233-240). He also reported

6

that he had no trouble getting along with others or with authority figures, and he could pay bills, count change, handle a savings account, and use a checkbook or money order. (Doc. 12, pp. 236-240). Lastly, he reported that he was not taking any medications at the time he completed the Function Report. (Doc. 12, p. 240).

Prior to the relevant time period, medical records showed that Plaintiff was involved in a motor vehicle accident on July 23, 2008. Hospital records show that as a result of that accident, Plaintiff suffered from a pneumothorax, multiple abrasions, fractures to the spinous process at the L3 and L4 levels, a minor spleen injury, and a partial ligament tear in his right knee. (Doc. 12, p. 556). At the request of his family, Plaintiff also underwent a psychiatric consultation for alcohol dependence and depression; however, he refused medication for depression. (Doc. 12, p. 578). An MRI performed on September 16, 2008, revealed a right transverse process fracture with mid edema at the L1 and L2 levels. (Doc. 12, p. 548). In January of 2009, also prior to the relevant time period, Plaintiff was involved in another motor vehicle accident in which he sustained contusions to his left hip, proximal left lower extremity, left knee, and left lower leg. (Doc. 12, p. 604). Plaintiff complained of pain located in the upper anterior thigh and left upper anterior shin; however, imaging revealed no fractures. (Doc. 12, pp. 604-611). Between March of 2009 and November of 2009, Plaintiff made several visits to Washington Regional Emergency Room with complaints of back pain from his 2008 automobile accident. An MRI performed on November 6, 2009, showed no evidence of significant canal or neural foraminal stenosis. (Doc. 12, p. 381). The ALJ noted that Plaintiff did not visit the emergency room again until May 25, 2010, and then again on June 7, 2010, for back pain. A MRI performed as a result of the May and June 2010 visits showed no lumbar spondylosis, no canal stenosis or neural foraminal narrowing. (Doc. 12, p. 379). Plaintiff also

visited the Washington Regional Medical Center Emergency Room in July, August, and October of 2010, with complaints of low back pain for which Plaintiff was given pain medication. Medical records from those emergency room visits indicated that Plaintiff complained that he was not getting any relief from pain medications and that his pain level was often at a 9 or 10; however, those records indicated that Plaintiff was "ambulating with steady gait," "ambulat[ing] normally," "ambulat[ing] without assistance," and that his gait "normal." (Doc. 12, pp. 443, 451, 452, 459, 466).

The medical evidence showed that in October of 2010, Plaintiff saw Dr. William S. Piechal, who diagnosed him with chronic benign intractable pain syndrome and lumbosacral pain with possible lumbosacral intradiscal pathology. (Doc. 12, pp. 360-361). Dr. Piechal continued pain management treatment until Plaintiff began seeing Dr. John H. Kendrick for pain management and blood pressure issues in October of 2011. (Doc. 12, pp. 373-375).

On April 30, 2012, during the relevant time period and while Plaintiff was being treated by Dr. Kendrick, Plaintiff visited the Washington Regional Medical Center Emergency Room for neck pain resulting from a physical altercation with his daughter and her boyfriend. (Doc. 12, pp. 424-427). At the emergency room, Plaintiff reported his chronic low back pain, but said he did not need an x-ray of his low back. X-rays of Plaintiff's chest and right elbow were negative, and a CT of Plaintiff's cervical spine showed no fractures or sublication. (Doc. 12, pp. 431, 433). Throughout 2012, Plaintiff continued seeing Dr. Kendrick for pain management treatment, including receiving refills of his pain medications. Dr. Kendrick's reports indicated that Plaintiff complained of mild depression; however, they also consistently indicated that Plaintiff appeared healthy, in no acute distress, and his musculoskeletal exam was essentially normal. (Doc. 12, pp. 325, 329, 332, 366, 372, 375). Notably, several of Dr. Kendrick's reports

also indicated that Plaintiff was a user of smokeless tobacco, and in December 2012, Plaintiff was dismissed from Dr. Kendrick's care after testing positive for THC, in violation of his pain management contract.  (Doc. 12, pp. 279, 291, 294, 297, 300, 303, 306).  Plaintiff did not seek further pain management treatment.

On May 2, 2013, Plaintiff visited the Washington Regional Medical Center Emergency Room and reported to emergency room personnel that he pulled a muscle in his low back when he almost slipped on wet grass.  (Doc. 12, pp. 414-419). The examination of Plaintiff's back revealed paraspinal tenderness and tenderness to lateral low back area. Upon discharge, Plaintiff was given Flexeril, Ibuprofen, and Lortab and was noted to be ambulating without assistance. (Doc. 12, pp. 418-419). Plaintiff was told to ice his back and refrain from heavy lifting. (Doc. 12, p. 415).

At the July 15, 2014, administrative hearing, Plaintiff testified that he was not ever free of pain in his back and that he continued to have trouble sitting, lifting, standing, and walking. (Doc. 12, p. 31-36).  Plaintiff contended that due to symptoms of back pain, he generally had one good day out of four and that he would spend three out of four days in bed. (Doc. 12, p. 35-36, 43).  Plaintiff also testified that while he was still able to help out on his family's farm by completing such tasks as driving into town to pick up parts for the farm equipment, he refrained from lifting hay bales or driving tractors. (Doc. 12, p. 30).  He also testified that he was not currently seeing a physician for his back, as treatment by Dr. Frances Socheck, a chiropractor, had improved his condition enough that he terminated all pain medication in January of 2013. (Doc. 12, p. 44-45).

With regard to Plaintiff's alleged mental impairment, specifically the mild depression he reported to Dr. Kendrick, the record failed to demonstrate that Plaintiff sought any on-going

9

and consistent treatment from a mental health professional during the relevant time period. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).

While it is clear that Plaintiff suffers with some degree of limitation, he has not established that he was unable to engage in any gainful activity prior to the expiration of his insured status. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### D. The ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

"The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (citations omitted). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(d)(2))

In the present case, when determining that Plaintiff could perform light work with limitations, the ALJ considered the relevant medical records, the medical opinions from treating and non-examining physicians, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

In his argument, Plaintiff specifically points to a March 20, 2012, Medical Assessment of Ability to do Work-Related Activities (Physical) produced by Dr. John Kendrick that revealed the following: Plaintiff was able to lift and carry up to twenty pounds, sit for eight hours in an eight-hour workday while repositioning every five minutes, but could not stand or walk for any length of time, and could not climb, balance, stoop, crouch, kneel, crawl, push or pull. (Doc. 12, pp. 316-318). Plaintiff was also restricted from heights, moving machinery, chemicals, noise, humidity, dust, temperature extremes, fumes, and vibrations. (Doc. 12, p. 319). Dr. Kendrick concluded that Plaintiff's pain management treatment prevented him from

11

engaging in any meaningful task. (Doc. 12, pp. 316-319). The ALJ considered the opinion of Dr. Kendrick, but determined that it was entitled to little weight and not supported by the medical evidence as a whole. The ALJ noted that based on Plaintiff's medical records, he had received only conservative treatment for his continued complaints of back pain and that while 2008 MRI results indicated lumbar transverse process fractures, these fractures apparently later resolved, as demonstrated by subsequent MRIs making no mention of them.

The ALJ also reasoned that in 2013, Dr. Lucy Sauer, non-examining medical consultant, reviewed the medical evidence, concluded that Plaintiff retained the ability to perform a range of light exertional work, and noted that Dr. Kendrick's Medical Source Statement was not supported by the medical evidence. Moreover, also in 2013, Dr. Jim Takach, non-examining medical consultant, reviewed Plaintiff's medical evidence and found Plaintiff retained the ability to perform a range of light exertional level work with occasional stooping and crouching, specifically highlighting to the fact that Plaintiff was receiving only conservative treatment for back pain. Dr. Takach further noted that on the same day that Dr. Kendrick's Medical Source Statement was issued, Dr. Kendrick's clinic notes demonstrated the following, "negative musculoskeletal or neurological abnormalities." (Doc. 12, p. 57). The ALJ ultimately agreed with the State Medical Consultants and gave their opinions significant weight. See Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (The ALJ has the responsibility to determine which findings are inconsistent and which opinions should be given greater weight than other opinions.).

The ALJ also discussed the fact that the RFC of light work with limitations was supported by Plaintiff's most recent MRIs, which initially showed fractures of the transverse process, but later showed no fractures or evidence of stenosis. Further support for the RFC

12

determination was the fact that Plaintiff continued to assist on his father's farm after he stopped working full time. In addition, the ALJ noted that five months passed after Plaintiff was released from pain management care before Plaintiff sought additional medication for back pain. As shown in Plaintiff's testimony, his chiropractic care had benefited him to the extent that he no longer took daily pain medication. Finally, there was no evidence that physicians recommended surgery or more invasive treatment for Plaintiff's complaints of back pain.

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

### E.    Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a cashier or a storage facility rental clerk.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV.    Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision

should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 6th day of March, 2017.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE